# UNITED STATES DISTRICT COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| HONOLULUTRAFFIC.COM; CLIFF SLATER; BENJAMIN CAYETANO; WALTER HEEN; HAWAII'S THOUSAND FRIENDS; THE SMALL BUSINESS HAWAII ENTREPRENEURIAL EDUCATION FOUNDATION; RANDALL W. ROTH; and DR. MICHAEL UECHI,<br><br>    Plaintiffs,<br><br>vs.<br><br>FEDERAL TRANSIT ADMINISTRATION; LESLIE ROGERS, in his official capacity as Federal Transit Administration Regional Administrator; PETER M. ROGOFF, in his official capacity as Federal Transit Administration Administrator; UNITED STATES DEPARTMENT OF TRANSPORTATION; RAY LAHOOD, in his official capacity as Secretary of Transportation; THE CITY AND COUNTY OF HONOLULU; and WAYNE YOSHIOKA, in his official capacity as Director of the City and County of Honolulu Department of Transportation,<br><br>    Defendants. | Civ. No. 11-00307 AWT<br><br>**ORDER ON DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

Pending before the Court are two Motions for Partial Summary Judgment filed by the City and County of Honolulu and Wayne Yoshioka, Director of the City and County of Honolulu Department of Transportation Services (collectively, "City Defendants"). (Docs. 86, 95). The Court heard argument on the motions on April 18, 2012. For the reasons stated below, both motions are **granted in part** and **denied in part**.

**I.  Background**

Plaintiffs allege that the Final Environmental Impact Statement/Section 4(f) Evaluation ("FEIS") and Record of Decision ("ROD") approving the Honolulu High-Capacity Transit Corridor Project ("Rail Project") do not comply with the requirements of the National Environmental Policy Act ("NEPA"), Section 4(f) of the Department of Transportation Act ("Section 4(f)"), the National Historic Preservation Act, and the regulations implementing those statutes. (First Am. Compl., Doc. 117). Both of City Defendants' Motions for Partial Summary Judgment concern Plaintiffs' claims under Section 4(f), 49 U.S.C. § 303. Section 4(f)(c) prohibits the Secretary of Transportation from approving a transportation project that requires the "use" of a public park, recreation area, or wildlife and waterfowl refuge of national, state, or local significance, or land of a historic site of national, state, or local significance, unless there is no prudent and feasible alternative to using that land, and the program or project includes all possible planning to minimize harm to the site.

Plaintiffs have informed the Court that they have found only limited evidence in the administrative record that Defendants were aware of issues related to the Rail Project's impact on four sites specified in Plaintiffs' First Amended Complaint: (1) the Pacific War Memorial Site; (2) the Hawaii Employers Council Building; (3) the DOT Harbors Division Building; and (4) the Tamura Building. (Doc. 96). Accordingly, Plaintiffs state that they will no longer pursue Section 4(f) claims specific to those four sites. (*Id.*).

**II.  Legal Standard**

Summary judgment is proper where there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### III.     City Defendants' First Motion for Partial Summary Judgment: Standing
### A.     Background

On January 23, 2012, Plaintiffs submitted standing declarations to Defendants, pursuant to this Court's Rule 16 Scheduling Order (Doc. 66). (*See* Docs. 86-2–86-16). In their first Motion for Partial Summary Judgment, City Defendants argue that Plaintiffs lack Article III standing to pursue claims related to those Section 4(f) sites that Plaintiffs failed to mention in their standing declarations, including: (1) Piers 10/11; (2) the Pacific War Memorial Site; (3) the Makalapa Navy Housing Historic District; (4) the Hawaii Employers Council Building; and (5) the Tamura Building. (Doc. 86).[1]

City Defendants also argue that Plaintiffs lack Article III standing to pursue Section 4(f) claims regarding three other Section 4(f) sites: (1) Ke'ehi Lagoon Park; (2) Queen Street Park; and (3) Mother Waldron Park. Although these three sites are mentioned in Plaintiffs' standing declarations, City Defendants argue that Plaintiffs have failed to demonstrate an injury-in-fact with respect to those sites, because Plaintiffs do not establish past use of those sites or concrete plans to visit them in the future.

The Federal Transit Administration ("FTA") and the other Federal Defendants joined City Defendants' motion. (Doc. 87). Plaintiffs filed a response in opposition to the motion, arguing that Section 4(f) does not require site-by-site demonstration of injury-in-fact. (Doc. 93). City Defendants replied in support of their motion. (Doc. 105).

### B.     Analysis

In order to demonstrate Article III standing, an environmental plaintiff must

---

[1] As noted above, Plaintiffs have conceded their claims with respect to the Pacific War Memorial Site, the Hawaii Employers Council Building, and the Tamura Building. (Doc. 96).

demonstrate: (1) an injury-in-fact that is actual or imminent, and concrete and particularized, in that it affects the plaintiff in a personal and individual way; (2) a causal connection between that injury and the conduct being challenged; and (3) that it is likely that the injury will be redressed by a decision favorable to the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 & n.1 (1992). At the summary judgment stage, each of these elements must be supported by affidavits or other evidence of specific facts. *Id.* at 561.

The parties' central disagreement is over whether Plaintiffs must demonstrate an injury-in-fact with respect to *each* of the Section 4(f) sites named in Plaintiffs' First Amended Complaint, or whether it is sufficient for Plaintiffs to show an injury-in-fact with respect to one or some, but not all, of the Section 4(f) sites. In essence, Defendants argue that each Section 4(f) site enumerated in the First Amended Complaint must be treated as a separate Section 4(f) claim for which Plaintiffs must independently establish standing. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (observing that a plaintiff must demonstrate standing for each claim he seeks to press) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Only one court has ever directly considered whether a plaintiff is required to establish site-specific standing in order to bring Section 4(f) claims. In an unpublished decision, the Fourth Circuit found that the plaintiffs' declarations established Section 4(f) standing with respect to a school complex, but not with respect to two other Section 4(f) sites. *Piedmont Envtl. Council v. U.S. Dep't of Transp.*, 58 F. App'x 20, 24 (4th Cir. 2003).[2] Because the plaintiffs' declarations did not mention the latter two sites, the plaintiffs failed to show that they would suffer any actual and imminent direct injury with respect to those properties. *Id.*

---

[2] Under Fourth Circuit Rule 32.1, citation in briefs and oral arguments to unpublished dispositions issued prior to 2007 in district courts within the Fourth Circuit is "disfavored." However, the decision may be cited if it has precedential value in relation to a material issue in a case and if there is no published opinion that would serve as well.

No other decision appears to have directly considered the necessity of site-by-site standing in a case where a plaintiff had established injury-in-fact as to one Section 4(f) site, but not as to others. While Plaintiffs cite a number of decisions that appear to have allowed Section 4(f) claims to go forward for multiple sites based on generalized, non-site-specific claims of injury or based on a showing of injury-in-fact as to a single Section 4(f) site, none of those decisions squarely addresses the issue of site-by-site standing and the problem may not have been presented to those courts. *See Save Our Heritage, Inc. v. FAA*, 269 F.3d 49, 54-56 (1st Cir. 2001); *Preservation Coalition of Erie County v. FTA*, 129 F. Supp. 2d 551, 561-62 (W.D.N.Y. 2000); *Sierra Club, Ill. Chapter v. U.S. Dep't of Transp.*, 962 F. Supp. 1037, 1040-42 (N.D. Ill. 1997).

In this Court's view, the approach taken by the Fourth Circuit in *Piedmont Environmental Council* makes a great deal of sense, given that courts generally analyze Section 4(f) claims regarding the "use" of historical sites and parks on a site-by-site basis. *See Laguna Greenbelt, Inc. v. U.S. Dep't of Transp.*, 42 F.3d 517, 531-33 (9th Cir. 1994); *Lakes Region Legal Def. Fund, Inc. v. Slater*, 986 F. Supp. 1169, 1199-1205 (N.D. Iowa 1997). Section 4(f) requires the FTA to make site-specific determinations about whether, and to what extent, a transportation project will use a given park or historical site and so, naturally, judicial review of the FTA's decisions is site-specific.

In *Laguna Greenbelt*, the Ninth Circuit analyzed a number of Section 4(f) claims raised by the plaintiffs and held that the plaintiffs could not challenge the FHA's "no use" determination for eight particular Section 4(f) sites on appeal, because they did not raise challenges regarding those specific sites before the district court. 42 F.3d at 532. This strongly suggests that the court viewed the plaintiffs' Section 4(f) challenges to various sites as separate and independent claims, because even though the plaintiffs had raised challenges to *some* Section 4(f) sites before the district court, that was not sufficient to raise an issue as to other Section 4(f) sites. If each challenge to a Section 4(f) site determination constitutes an independent claim, then *Davis* requires that Plaintiffs independently establish standing for each Section 4(f) site. *See* 554 U.S. at 734.

The Court therefore agrees with Defendants that site-specific standing is required in order to bring a Section 4(f) claim. It would not make sense to allow Plaintiffs to make a claim about the Rail Project's impact on the Tamura Building, for example, merely because Plaintiffs demonstrated that they would be injured by the Rail Project's impact on the Pearl Harbor Monument. The two claims would be analytically distinct, and it would not serve the purposes of Article III standing to allow Plaintiffs to challenge agency action affecting a site that they had never used or visited and never intended to use or visit in the future. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("Accepting an intention to visit the National Forests as adequate to confer standing to challenge any Government action affecting any portion of those forests would be tantamount to eliminating the requirement of concrete, particularized injury in fact.").

In order to establish injury-in-fact, a environmental plaintiff must show that he or she would be directly affected by the agency action at issue; it is not enough to show that one has visited a site in the past if one has not alleged concrete plans to return in the future. *Lujan*, 504 U.S. at 564 (holding that "some day" intentions to return do not support a finding of imminent injury). Harm to the environment that affects recreational or aesthetic interests suffices, but only if the plaintiff can show more than a vague desire to return to the site. *Summers*, 555 U.S. at 494-96. However, where the recreational use of a particular area has been extensive and in close proximity to the plaintiff, the Ninth Circuit has found that the plaintiff's expressed intention to continue using the land is sufficiently concrete to constitute an injury-in-fact. *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1256 (9th Cir. 2010) (citing *White Tanks Concerned Citizens, Inc. v. Strock*, 563 F.3d 1033, 1039 (9th Cir. 2009)).

By failing to mention Piers 10/11, the Pacific War Memorial Site, the Makalapa Navy Housing Historic District, the Hawaii Employers Council, and the Tamura Building at any point in their standing declarations, Plaintiffs have failed to demonstrate standing as to those sites. The Court therefore **grants** summary judgment to Defendants on each of these sites, as well as any other sites not mentioned in the standing affidavits.

In addition, Plaintiffs have failed to demonstrate injury-in-fact with respect to Ke'ehi Lagoon Park and Queen Street Park. Those two parks are mentioned in only one of Plaintiffs' standing declarations, that of Donna Wong, the Executive Director of Hawaii's Thousand Friends ("HTF"). (*See* Wong Decl., Doc. 86-8 at ¶ 4). Wong states that HTF supports the preservation of public parks "such as Keehi Lagoon Park" and that the Rail Project will "significantly impact the aesthetic, recreational, and historic values of existing parks used by HTF members." (*Id.* at ¶ 4). She also states that HTF supports the establishment of new public parks "such as Queen Street Park," adding, "I believe that HTF members would visit such additional parks if they were available." (*Id.*). However, Wong's declaration does not describe any HTF members' concrete plans to use those two sites in the future, or specifically mention whether HTF members had regularly used Ke'ehi Lagoon Park in the past. Wong's declaration simply does not provide evidence of more than a "some day" or "vague" intention to use the two parks in the future. As a result, the Court **grants** summary judgment to Defendants on Plaintiffs' Section 4(f) claims as to Queen Street Park and Ke'ehi Park.

In contrast, Plaintiffs have demonstrated injury-in-fact as to Mother Waldron Park. Mother Waldron Park is mentioned only once by Plaintiffs, in the declaration of Michelle Matson, a member and former President of HTF. (*See* Matson Decl., Doc. 86-11). Matson explains that she is a resident of Honolulu, and that she regularly attends meetings and activities in downtown Honolulu and plans to continue to do so. (*Id.* at ¶¶ 1, 3). She adds, "I frequent and enjoy the outdoor open space and gathering place opportunities of the public parks in the downtown area, such as . . . Mother Waldron Park." (*Id.* at ¶ 3). While Matson does not specify when or how often she plans to return to Mother Waldron Park, she has expressed an intention to continue to use it. The Ninth Circuit has found repeated past use of a local park sufficient to establish standing, because it shows a tangible, continuing connection to a particular location. *See White Tanks Concerned Citizens*, 563 F.3d at 1039. Consequently, the Court **denies** summary judgment on standing grounds as to Mother Waldron Park.

**IV.  City Defendants' Second Motion for Partial Summary Judgment: Waiver**

**A.  Background**

City Defendants' second Motion for Partial Summary Judgment argues that Plaintiffs have waived all Section 4(f) claims pertaining to specific sites that they did not comment on during the administrative process. (Doc. 95).  The Section 4(f) sites that Defendants claim Plaintiffs failed to comment on include: (1) Pearl Harbor National Historic Landmark; (2) Merchant Street Historic District; (3) DOT Harbors Division Building; (4) Pacific War Memorial Site; (5) Makalapa Navy Housing Historic District; (6) Hawaii Employers Council; and (7) the Tamura Building.  Defendants also request summary judgment as to any other Section 4(f) sites not specifically identified by Plaintiffs during the notice-and-comment process on the Draft Environmental Impact Statement ("DEIS"), FEIS, and ROD.

Plaintiffs filed a response in opposition, in which they claim that they did raise concerns about: (1) the Pearl Harbor Landmark; (2) Merchant Street; and (3) Makalapa Navy Housing.  (Doc. 96).  Plaintiffs further argue that the administrative record clearly demonstrates that Defendants had independent knowledge of concerns about these three sites.  City Defendants filed a reply in support of their motion.  (Doc. 104).  Federal Defendants did not join City Defendants' motion.

**B.  Analysis**

As an initial matter, the Court must **deny** Defendants' catch-all request for summary judgment on *any* Section 4(f) claims involving Section 4(f) sites not specifically identified by Plaintiffs during the administrative proceedings.  There is insufficient evidence before the Court to determine whether such Section 4(f) claims, concerning unspecified sites, could be saved by the "so obvious" exception to the exhaustion requirement, further described below.

As earlier noted, Plaintiffs concede their Section 4(f) claims with respect to the Pacific War Memorial Site, the Hawaii Employers Council, the DOT Harbors Division Building, and the Tamura Building.  Accordingly, the Court **grants** summary judgment to

- 8 -

Defendants on those sites.[3] In addition, the Court need not address the parties' waiver arguments with respect to the Makalapa Navy Housing site, as the Court granted summary judgment to Defendants on that site on standing grounds for the reasons laid out above. The parties' dispute on waiver grounds has therefore narrowed to two sites: (1) the Pearl Harbor Landmark; and (2) the Merchant Street Historic District.

### 1. Legal Standard

The Administrative Procedure Act ("APA") requires that plaintiffs exhaust administrative remedies before bringing suit in federal court. *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 965 (9th Cir. 2006). In the NEPA context, this means that a plaintiff must structure its participation so that it alerts the agency to its positions and contentions. *Id.* A plaintiff's comments, to be sufficient, must show why a particular mistake by the agency was of possible significance to the agency's result. *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978). The purpose of the exhaustion requirement is to avoid premature claims and to ensure that the agency is given the opportunity to bring its expertise to bear to resolve a claim. *Great Basin Mine Watch*, 456 F.3d at 965. If a plaintiff fails to meet exhaustion requirements, its claim is waived and will not be considered by a federal court. *See Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 764-65 (2004).

The Court agrees with Defendants that these same exhaustion principles apply in the Section 4(f) context. Judicial review of Section 4(f) is governed by the APA. *See N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1152 (9th Cir. 2008). Moreover, the Ninth Circuit has applied exhaustion principles quite expansively. *See Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010) (applying exhaustion doctrine to agency decision under National Forest Management Act); *see also Portland Gen. Elec. v. Bonneville Power Admin.*, 501 F.3d 1009, 1023 (9th Cir. 2007) ("As a

---

[3] The Court notes that it previously granted summary judgment to Defendants on the Pacific War Memorial Site, the Hawaii Employers Council, and the Tamura Building, on standing grounds, above.

general rule, we will not review challenges to agency action raised for the first time on appeal.").

The Ninth Circuit has held that the exhaustion requirement should be interpreted broadly. *Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058, 1065 (9th Cir. 2010). Comments that alert an agency to an argument in general terms are enough to avoid waiver, as long as the agency is given the opportunity to bring its expertise to bear to resolve the claim. *Lands Council*, 629 F.3d at 1076. Precise legal terms need not be used in the comment, but the issue must be raised with sufficient clarity to allow the decision maker to understand and rule on the issue raised. *Nat'l Parks & Conservation Ass'n*, 606 F.3d at 1065. There is no bright-line standard as to when this requirement has been met, and so courts must consider exhaustion arguments on a case-by-case basis. *Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002).

Even if Plaintiffs did not sufficiently comment on the two sites at issue, Plaintiffs' claims may not be waived if the FEIS' flaws were "so obvious" that there was no need for a commenter to point them out specifically in order to preserve the ability to challenge the FEIS. *Public Citizen*, 541 U.S. at 765; *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1092-93 (9th Cir. 2006). If the agency had "independent knowledge" of the issues that concerned the plaintiffs, then the "so obvious" exception allows plaintiffs to bring a claim that they did not exhaust. *Barnes v. United States*, 655 F.3d 1124, 1132 (9th Cir. 2011).

Defendants argue that, in order for the "so obvious" exception to apply, Plaintiffs must show that Defendants have "acknowledged" the allegedly obvious flaw. (*See* Doc. 104 at 16-17). While it is true that the three Ninth Circuit cases discussing the "so obvious" requirement found that the government had knowledge of the claim at issue specifically because the government itself had researched or commented on the issue, none of these decisions explicitly requires that the government have acknowledged an error in order for a plaintiff to demonstrate that the government had "independent knowledge" of a flaw. *See Barnes*, 655 F.3d at 1132-34; *'Ilio'ulaokalani Coal.*, 464 F.3d

at 1091-93; *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 559 (9th Cir. 2000). The cases instead imply that a plaintiff need only show that the agency was aware of the problem, not that the agency explicitly recognized the problem's existence.

**2.     Pearl Harbor National Historic Landmark**

The Court concludes that Plaintiffs did not exhaust their Section 4(f) claim with respect to Pearl Harbor during the notice-and-comment process on the Rail Project. Plaintiff HTF commented on Defendants' DEIS, noting that Pearl Harbor was among the community facilities that would be directly affected by the Rail Project and complaining that the DEIS did not provide information about direct, indirect, or cumulative impacts on such facilities and that there were no details provided about the DEIS' Section 4(f) evaluation. (AR 000855 at 1916-18). However, HTF's comment did not suggest that HTF was concerned about any *specific* negative impact on the site. Although HTF was not required to describe its claim with any precise legal terminology, HTF did not comment with sufficient clarity to put Defendants on notice that HTF was concerned that the Rail Project would "use" Pearl Harbor in violation of Section 4(f).

Moreover, Plaintiffs have not demonstrated that the FEIS' flaws were "so obvious" as to allow Plaintiffs to raise unexhausted claims with respect to Pearl Harbor. Plaintiffs point to two letters from the National Park Service, a letter from the Environmental Protection Agency, and a letter from the Hawaii State Historic Preservation Division. Generally, the letters express concern that the DEIS did not consider the impact of proposed station locations within the Pearl Harbor Landmark and did not give enough attention to potential noise and visual impacts on the site. (AR 000855 at 00887-88, 893, 971, 1106). Defendants have persuasively shown that they addressed the concerns raised in those letters, both by changing the route of the Rail Project and by conducting further analysis of the noise and visual impacts of the Project. (AR 30 at 000170; AR 129243-44). As a result, the comments from those three groups would not have made "obvious" any flaw in the FEIS, because Defendants had already made an effort to address them.

- 11 -

Because Plaintiffs failed to exhaust their Section 4(f) claim as to Pearl Harbor during the notice-and-comment process, and because they have failed to show that Defendants had "independent knowledge" of their challenge to the Rail Project's "use" of Pearl Harbor, the Court **grants** summary judgment to Defendants on Plaintiffs' Pearl Harbor Section 4(f) claim.

### 3. Merchant Street Historic District

To demonstrate that Plaintiffs commented on the Section 4(f) use of the Merchant Street Historic District, Plaintiffs cite three comment letters written by Matson, which highlighted four protected sites (Aloha Park, Irwin Park, the Dillingham Transportation Building, and Mother Waldron Park), and also mentioned a protected view that Plaintiffs now claim is inside of the Merchant Street area. (AR 000855 at 2490-91, 95-99; AR 017157 at 17344-48). Plaintiffs also cite a letter written by HonoluluTraffic that argued in favor of a "Managed Lanes Alternative" that would avoid "most significant 4(f) properties" and a letter from HTF noting that the Rail Project would "change the visual character of the streetscape and the historical disconnection [sic] between downtown and the waterfront." (AR 071958; AR 000855 at 001922).

None of the comments cited by Plaintiffs, however, mentions the Merchant Street Historic District by name. While Matson's comment letters could be read to touch on the subject of the Merchant Street viewscape, it would be equally fair for the FTA to have read Matson's letters as expressing concerns only with respect to the four protected sites named in the letters, the Aloha Tower, Irwin Park, the Dillingham Transportation Building, and Mother Waldron Park. The Court concludes that these comments did not raise any issue as to the "use" of the Merchant Street area with sufficient clarity to allow Defendants to understand and bring their expertise to bear on the claim raised. Plaintiffs' comments thus did not satisfy the exhaustion requirement.

Plaintiffs argue in the alternative that Defendants had independent knowledge of the Section 4(f) issues with respect to Merchant Street based on letters from the Advisory Council on Historic Preservation and the Hawaii Historic Foundation, which raised

concerns about indirect and cumulative effects of the Rail Project on the Merchant Street area. (AR 059002-03, AR 059005-07). Plaintiffs also point to Defendants' own notes, which acknowledged concerns about impacts on the Merchant Street Historic District and responded to those concerns. (AR 59177-79).

Plaintiffs' reliance on Defendants' notes is misplaced. Defendants' notes reveal that Defendants tried to address the concerns raised in public comments about the Merchant Street Area. Plaintiffs therefore appear to be arguing that Defendants' response to those comments was inadequate, not that Defendants altogether failed to respond. "When the argument is one of degree, rather than an outright failure to address, the plaintiff must raise that argument during the comment period or be precluded from litigating it at a later date." *League of Wilderness Defenders v. Bosworth*, 383 F. Supp. 2d 1285, 1296-97 (D. Or. 2005). It would be unreasonable to hold that Defendants' attempts to address the comment letters concerning the Merchant Street District were "obviously" flawed, when Plaintiffs made no effort to point out those flaws themselves.

The Court therefore **grants** summary judgment to Defendants on Plaintiffs' Section 4(f) claim as to Merchant Street for failure to exhaust.

**V. Conclusion**

For the reasons set forth above,

**IT IS HEREBY ORDERED:**

1. City Defendants' first Motion for Partial Summary Judgment (Doc. 86) is **denied** with respect to Plaintiffs' Section 4(f) claim regarding Mother Waldron Park. The motion is **granted** as to Plaintiffs' Section 4(f) claims concerning Piers 10/11, the Pacific War Memorial Site, the Makalapa Navy Housing Historic District, the Hawaii Employers Council Building, the Tamura Building, Ke'ehi Lagoon Park, Queen Street Park, and any other Section 4(f) sites not mentioned in Plaintiffs' standing declarations.

2. City Defendants' second Motion for Partial Summary Judgment (Doc. 95) is **granted** with respect to the DOT Harbors Division Building, the Pearl

Harbor National Historic Landmark, and the Merchant Street Historic District. The motion is **denied** as to any other Section 4(f) sites not specifically identified by Plaintiffs during the notice-and-comment process and not specified by name in City Defendants' motion.

DATED this 17th day of May, 2012.

                                    */s/ A. Wallace Tashima*
                                    A. WALLACE TASHIMA
                                    United States Circuit Judge
                                    Sitting by designation