**UNITED STATES DISTRICT COURT**

**DISTRICT OF HAWAII**

| | |
|---|---|
| HONOLULUTRAFFIC.COM; CLIFF SLATER; BENJAMIN CAYETANO; WALTER HEEN; HAWAII'S THOUSAND FRIENDS; THE SMALL BUSINESS HAWAII ENTREPRENEURIAL EDUCATION FOUNDATION; RANDALL W. ROTH; DR. MICHAEL UECHI; and THE OUTDOOR CIRCLE,<br><br>        Plaintiffs,<br><br>vs.<br><br>FEDERAL TRANSIT ADMINISTRATION; LESLIE ROGERS, in his official capacity as Federal Transit Administration Regional Administrator; PETER M. ROGOFF, in his official capacity as Federal Transit Administration Administrator; UNITED STATES DEPARTMENT OF TRANSPORTATION; ANTHONY FOXX, in his official capacity as Secretary of Transportation; THE CITY AND COUNTY OF HONOLULU; and MICHAEL FORMBY, in his official capacity as Director of the City and County of Honolulu Department of Transportation Services,<br><br>        Defendants,<br><br>FAITH ACTION FOR COMMUNITY EQUITY; PACIFIC RESOURCE | Civ. No. 11-0307 AWT<br><br>**ORDER ON OBJECTION TO NOTICE OF COMPLIANCE** |

PARTNERSHIP; and MELVIN UESATO,

    Intervenors - Defendants.

_____

Now pending before the court is Plaintiffs' Objection to Notice of Compliance. The Objection has been fully briefed and argued and, on February 6, 2014, was taken under submission. For the reasons set forth below, Plaintiffs' Objection is denied. The court, therefore, grants summary judgment to Defendants on all claims subject to the court's remand. The court's injunction of Phase 4 activities is terminated.

**I. Background**

On November 1, 2012, the court issued its Order on Cross-Motions for Summary Judgment. (ECF Doc. 182). The court granted summary judgment to Plaintiffs on three claims arising under § 4(f) of the Department of Transportation Act, 49 U.S.C. § 303 (2006): (1) the City and County of Honolulu (the "City") and the Federal Transit Administration ("FTA") (collectively, "Defendants") arbitrarily and capriciously failed to complete reasonable efforts to identify above-ground traditional cultural properties ("TCPs"); (2) Defendants failed adequately to consider the Beretania Street Tunnel alternative ("Tunnel Alternative" or "Alternative"); and (3) Defendants failed adequately to consider whether the approved project design ("Project") would constructively use Mother Waldron Park. The court granted summary judgment to Defendants on all other claims.

The court issued a remedy on December 27, 2012 (ECF Doc. 202), awarding partial injunctive relief and remanding to the FTA for further review pertaining to Plaintiffs' three remaining claims. The court specified that its injunction would terminate – absent Plaintiffs' objection – thirty days after Defendants filed with the court notice and evidence of compliance with the Summary Judgment Order.[1]

---

[1] Plaintiffs appealed the Summary Judgment Order, but only with respect to claims not subject to the court's remand. *See HonoluluTraffic.com v. Fed. Transit Admin.*,

On October 8, 2013, Defendants filed with the court a Notice of Compliance (ECF Docs. 250-251), containing a Final Supplemental Environmental Impact Statement/Section(f) Evaluation ("SEIS") and Amended Record of Decision ("AROD"). Those documents and accompanying exhibits addressed the three deficiencies identified in the court's Summary Judgment Order. Specifically, Defendants found: (1) no adverse effect on any previously unidentified TCPs; (2) that the Tunnel Alternative is not a feasible and prudent avoidance alternative; and (3) no constructive use of Mother Waldron Park.

Plaintiffs timely filed an Objection to Defendants' Notice of Compliance (ECF Doc. 257), effectively staying the automatic termination of the injunction. The Objection challenged only Defendants' determination under § 4(f) that the Tunnel Alternative is not a feasible and prudent avoidance alternative.[2] The court and parties agree (ECF Doc. 264) that Plaintiffs' Objection is, in effect, a challenge to final administrative action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

## II. The Legal Standard

"The [APA] provides authority for the court's review of decisions under . . . Section 4(f) of the Department of Transportation Act." *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1152 (9th Cir. 2008). "Under the APA, the district court may only set aside agency actions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). A decision is arbitrary and capricious

> only if the agency relied on factors Congress did not intend it to consider,

---

No. 13-152777, slip op. at 12 (9th Cir. Jan. 31, 2014). Thus, Plaintiffs' appeal did not divest this court of jurisdiction over the claims remanded to the FTA. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1064 (9th Cir. 2010).

[2] As Plaintiffs acknowledged at the February 6, 2014, hearing, they do not object to Defendants' analyses of the TCPs or Mother Waldron Park. The court thus concludes that Defendants have complied with the Summary Judgment Order with respect to those claims.

> entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* at 1152-53 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)). An agency has discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive. *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989).

### III. Merits

Only § 4(f) claims remain at this stage of the proceedings. Section 4(f) provides that the Secretary of Transportation (the "Secretary") may approve a transportation project requiring the "use" of a public park or historic site of national, state, or local significance only if: (1) "there is no prudent and feasible alternative" to using the site; and (2) the project includes "all possible planning" to minimize harm to the site resulting from the use. 49 U.S.C. § 303. Section 4(f) therefore imposes a substantive mandate on agencies implementing transportation improvements. *N. Idaho Cmty. Action Network*, 545 F.3d at 1158.

When a court reviews a § 4(f) determination, it must ask three questions:

> First, the reviewing court must determine whether the Secretary acted within the scope of his authority and whether his decision was reasonably based on the facts contained in the administrative record. Second, the reviewing court must determine whether the Secretary's decision was arbitrary, capricious or an abuse of discretion because he failed to consider all relevant factors or made a clear error of judgment. Third, the reviewing court should decide whether the Secretary complied with the applicable procedural requirements.

*Ariz. Past & Future Found., Inc. v. Lewis*, 722 F.2d 1423, 1425 (9th Cir. 1983) (citing *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)); *see also Adler v. Lewis*, 675 F.2d 1085, 1091 (9th Cir. 1982).

Relevant to this proceeding, a feasible and prudent avoidance alternative "avoids using Section 4(f) property and does not cause other severe problems of a magnitude that substantially outweighs the importance of protecting the Section 4(f) property." 23

C.F.R. § 774.17 (2013). An alternative is not feasible if it cannot be built as a matter of sound engineering judgment. *Id.* An alternative is not prudent if, among other things, it "compromises the project to a degree that it is unreasonable to proceed with the project in light of its stated purpose and need" or it "results in additional construction, maintenance, or operational costs of an extraordinary magnitude." *Id.* Where there is no feasible and prudent avoidance alternative, the Secretary may approve only the alternative that "[c]auses the least overall harm in light of the statute's preservation purpose." 23 C.F.R. § 774.3(c).

Plaintiffs contend that Defendants acted arbitrarily and capriciously in rejecting the Tunnel Alternative.[3] Plaintiffs argue, first, that the Tunnel Alternative is a "prudent and feasible alternative" because it both avoids using § 4(f) properties and is feasible and prudent. Alternatively, Plaintiffs argue that the Alternative poses the "least overall harm," even if it is not a prudent and feasible avoidance alternative. The court considers each argument *seriatim*.

### A. Avoidance Alternative

An alternative cannot qualify as a "feasible and prudent avoidance alternative" if it uses any § 4(f) properties. *See* 23 C.F.R. § 774.17; *id.* (describing in the definition of "all possible planning" that a feasible and prudent avoidance alternative "avoid[s] Section 4(f) properties *altogether*" (emphasis added)); FHWA Section 4(f) Policy Paper 11, 13 (2012) ("Feasible and prudent avoidance alternatives are those that avoid using *any* Section 4(f) property . . . ." (emphasis added)).

Defendants determined that the Tunnel Alternative would directly use the NRHP-eligible Oahu Rail & Land Company ("OR&L") parcel, among other properties, because

---

[3] Plaintiffs also argued in their moving papers that Defendants acted arbitrarily and capriciously by failing to consider new information in the SEIS. Defendants moved to strike that argument as improper. *See* (ECF Doc. No. 271). Plaintiffs retracted the argument and filed a statement of non-opposition to the motion to strike. *See* (ECF Doc. No. 276). In light of that retraction, the court grants Defendants' Motion to Strike.

- 5 -

the Alternative requires construction of a station (the Ka'aahi Street Station) inside of the parcel boundary. AR000153906-09 [SEIS 40-43]. Plaintiffs challenge that determination based on their belief that the Ka'aahi Street Station would fall within 1,500 feet of another station (the Iwilei Station). Plaintiffs argue that it is arbitrary and capricious to construct the Ka'aahi Street Station – and thus to use the OR&L parcel – because no other stations along the project corridor fall within a half of a mile of each other. (Pls. Obj. at 9-10).

Plaintiffs' belief is misplaced. Defendants state, and the record shows,[4] that the Iwilei Station *would not be built* if Defendants were to implement the Tunnel Alternative. (City Defs. Resp. at 8; Fed. Defs. Resp. at 6-7). Only the Ka'aahi Street Station would be built, therefore no two stations would fall within 1,500 feet of one another. Defendants have also provided a reasonable explanation of why the Ka'aahi Street Station could not be moved in order to avoid the OR&L parcel. *See* AR00154077 (stating the station could not be moved west because the grade of the track would be too steep to comply with the Americans with Disabilities Act and could not be moved east because it would use A'ala Park, another § 4(f) resource); AR00153907 [SEIS 41] (same). In any case, Plaintiffs do not challenge the location of the Ka'aahi Street Station on any basis other than their belief that it would fall within 1,500 feet of the Iwilei Station. Because the Iwilei Station would not be built if the Tunnel Alternative were implemented, and because Plaintiffs have not challenged Defendants' apparently reasonable conclusion that the Ka'aahi Street Station

---

[4] A map displaying the connection of the Dillingham alignment to the Tunnel Alternative shows only the Ka'aahi Street Station without a station at the intersection where the Iwilei Station is proposed to be. *Compare* AR00153908 [SEIS at 42] (Tunnel Alternative) *and* AR00155256 (detailed map and profile of Ka'aahi Street area), *with* AR00000715, AR00000355 [FSEIS at 5-36, 2-40] (Project). The Tunnel Alternative maps indicate that the Beretania Street tunnel begins to descend at Ka'aahi Street, where the Iwilei Station would be located. *See* AR00153908 [SEIS at 42]; AR00155256; AR00049571 (describing the tunnel alignment as "descend[ing] to a tunnel portal in the vicinity of Ka'aahi Street"). Iwilei does not appear on the maps, and the Tunnel Alternative cannot begin to descend into a tunnel portal at the location of an above-grade station.

could not be relocated, the court finds no basis on which to overturn the agency decision. It was not arbitrary and capricious for Defendants to have concluded that the Tunnel Alternative would use the OR&L parcel; therefore, the Tunnel Alternative is not a feasible and prudent avoidance alternative. For this reason, the court need not address Plaintiffs' challenges to Defendants' use determinations of McKinley High School and the King Florist Building, or their challenge to Defendants' prudence analysis. The Tunnel Alternative's use of the OR&L buildings renders it incapable of qualification as a feasible and prudent *avoidance* alternative.

### B.     Least Overall Harm

Where there is no feasible and prudent avoidance alternative, the Agencies may approve only the alternative that causes the "least overall harm in light of the statute's preservation purpose." 23 C.F.R. § 774.3(c). The regulations specify seven factors that an agency must consider. 23 C.F.R. § 774.3(c)(1)(i)-(vii). Defendants determined that the Project poses the least overall harm in light of § 4(f)'s preservation purpose because the Tunnel Alternative increases costs by $960 million (in year-of-expenditure, or YOE, dollars), causes more severe harm to § 4(f) properties, and causes greater construction-related and other disruption to non-§ 4(f) resources.[5] *See* AR00153941 [SEIS at 75]. None of these determinations is arbitrary and capricious.

#### 1.     Cost

Defendants must consider "[s]ubstantial differences in costs among the alternatives" as a factor in the "least overall harm" analysis. 23 C.F.R. § 774.3(c)(1)(vii). Defendants calculate this difference in cost between the alternatives by comparing the cost of the Project (which ends at the Ala Moana Center, with a planned future extension

---

[5] Defendants determined that three of the "least overall harm" factors are "about equal": (1) the ability to mitigate adverse impacts on § 4(f) properties; (2) the views of relevant officials; and (3) the degree to which the Project and Tunnel Alternative meet the purpose and need of the Project. AR00153941 [SEIS at 75].

to the University of Hawaii at Manoa) with the cost of the Tunnel Alternative (which extends to the University of Hawaii at Manoa). (Pls. Obj. at 15-18); AR00154082. Plaintiffs contend that Defendants are comparing apples and oranges: the "shortest and least costly version" of the Project with the "longest and costliest version" of the Tunnel Alternative. (Pls. Reply at 16).

While the proper cost comparison in this case is not immediately self-evident, the Court concludes that Defendants did not act arbitrarily and capriciously by comparing the Project (ending at the Ala Moana Center) to the Tunnel Alternative (ending at UH Manoa). There are, in fact, a number of potentially relevant comparisons: (1) the Project to the "long" tunnel (ending at UH Manoa); and (2) the Project to a "short" tunnel (ending at Ala Moana Center or elsewhere). To these two might be added: (3) the Project (ending at Ala Moana Center) to the "long" Project (ending at UH Manoa). Each of the alternatives in these comparisons has its potentially prohibitive disadvantages. The "long" tunnel adds $960 million (YOE) in costs. AR00153931-32 [SEIS at 65-66]. The "short" tunnel does not end at a logical terminus and fails to meet the Purpose and Need of the Project. AR00153977 [SEIS at 111]. And the "long" Project adds $820 million (YOE) in costs. AR00153977-79 [SEIS at 111-13].

Plaintiffs point to the cost of the "long" Project and implore the court to compare it to that of the Tunnel Alternative, yielding a difference in cost of only 2 percent. (Pls. Obj. at 17). But the difference in cost between the two "long," hypothetical alternatives is not the relevant comparison; the relevant comparison is between *the approved Project* and *any other alternative*, be it a "long" tunnel or a "long" project. Although there is a surface appeal to Plaintiffs' comparison (alternative (1) comparing the Project to the "long" tunnel Alternative), a closer analysis of its implications reveals its flaws. For one, if non-approved alternatives were relevant comparators, Defendants would need to compare those alternatives along all other dimensions, not just cost — the number of historic properties affected, environmental impacts, construction-related disruption, and

so on. Plaintiffs do not suggest that Defendants need conduct that analysis for the "long" Project. Indeed, Defendants explicitly left analysis of Project extensions for another day, if ever, because no funding could be identified for them. AR00000791 [FEIS at 8-12]. Furthermore, if § 4(f) plaintiffs could cherry-pick from rejected alternatives to find more favorable comparisons to their desired alternative, plaintiffs' alternatives would never appear unfavorable.

Moreover, the Court's Summary Judgment Order of November 1, 2012, held that Defendants had "fail[ed] adequately to consider the Beretania Street Tunnel alternative prior to eliminating it as imprudent." On the basis, *inter alia*, of that holding, the matter was remanded to the FTA "to comply with the court's Summary Judgment Order," subject to a partial injunction enjoining Phase 4 pending full compliance. This order "to consider the Beretania Tunnel Alternative" fairly could be read, consistent with § 774.3(c)(1), as requiring a comparison of the Project with the Tunnel Alternative along all of their axes, including cost. And while this reading does not make all other comparisons irrelevant, it does support that the comparison made by Defendants is not arbitrary or capricious. Thus, the most principled baseline for comparison is the Project-as-designed, that the agency approved, despite the fact that, in this case, the approved design and contested alternative end at different termini. Just as it was not arbitrary and capricious for Defendants not to analyze the Project's impact on historic properties and the like with respect to the proposed Project *extension*, it was not arbitrary and capricious for Defendants to compare only the Project's cost, not the Project extension's cost.

As the court's Summary Judgment Order observed, prior case law provides little guidance on when a cost increase becomes excessive enough to make an alternative imprudent. Order at 24-25 (citing *Citizens for Smart Growth v. Sec'y of the Dep't of Transp.*, 669 F.3d 1203, 1217 (11th Cir. 2012); *Concerned Citizens Alliance, Inc. v. Slater*, 176 F.3d 686, 703 (3d Cir. 1999)). Although the court's previous discussion of cost increases may not be law of the case because it involved consideration of another

- 9 -

tunnel than the Tunnel Alternative, the discussion's underlying logic is still sound. The court cannot conclude that it was arbitrary and capricious for Defendants to conclude that $960 million (YOE) added cost is a "substantial difference[] in cost[]."

### 2. Severity of harm to the protected activities, attributes, or features that qualify each Section 4(f) property for protection

Defendants concluded that the Project would inflict less severe harm to § 4(f) properties, AR00153935-38 [SEIS at 69-72], even though the Project would use a greater number of § 4(f) properties than the Tunnel Alternative and even though some of those properties are particularly historically significant, (Pls. Obj. at 24). Defendants' conclusion is based on the fact that the Project would use only non-contributing elements of § 4(f) properties while the Tunnel Alternative would require removal, relocation, alteration, or demolition of certain properties. *See* AR00153935-38 [SEIS at 69-72].

The court again cannot conclude that it was arbitrary and capricious for Defendants to have balanced the severity of harm to § 4(f) resources in this way. Plaintiffs are correct to note that the Project would use a greater number of § 4(f) properties and that the Chinatown District and Dillingham Transportation Building are significant historic resources. But the Project would physically affect only non-contributing elements of those properties[6] and would not substantially impair the

---

[6] *See* AR00000721 [FEIS at 5-42] (describing use of a non-contributing plaza next to the Dillingham Transportation Building for a station entrance); AR00152908 (describing in Dillingham NRHP listing only the building and immediate landscaping around the building); AR00000727 [FEIS at 5-48] (stating that the Project would involve destruction of a metal roof extension that is a non-contributing element of the Downtown HECO Plant and Leslie A. Hicks Building); AR 00039884 (describing use of non-contributing parking lot and trees adjacent to buildings); AR00000718 [FEIS at 5-39] (describing use for Chinatown Station of non-contributing parking lot adjacent to non-contributing modern buildings); AR00039840 (more detailed map of the Project structures in Chinatown); AR00000714 [FEIS at 5-35] (describing use by an access easement of a "an area behind the [OR&L] buildings and their associated parking lots that has been cleared and paved"); AR00153938 (describing this area as a "non-contributing element[]").

properties' settings.[7] By contrast, the Tunnel Alternative would require removal, relocation, or alteration of the OR&L Document and Storage Building and the former filling station on the OR&L parcel. It was not unreasonable for Defendants to have prioritized the severe harm to the OR&L resources over the harm to non-contributing elements of the Chinatown District and Dillingham Building in determining that the Project posed less severe harm "to the *protected* activities, attributes, or features that qualify each § 4(f) property for protection." 23 C.F.R. § 774.3(c)(1)(ii) (emphasis added). The Tunnel Alternative's severe impact on the OR&L buildings is therefore sufficient to support Defendants' conclusion, even assuming that Defendants erred in determining that the Tunnel Alternative would use McKinley High School or the King Florist building. *Cf. Prairie Band Pottawatomie Nation v. Fed. Highway Admin.*, 684 F.3d 1002, 1022-23 (10th Cir. 2012) (holding that omissions of even "material fact[s]" do not require invalidation of agency action where "the legitimate factors considered by the [agency] provide[] sufficient justification to conclude that alternatives to the selected [project] [are] imprudent" (internal quotation marks omitted)); *KPMG, LLP v. SEC*, 289 F.3d 109, 126 (D.C. Cir. 2002) (stating remand is warranted "only when we conclude that there is a significant chance that but for [an] error the agency might have reached a different result" (alteration in original) (internal quotation marks omitted)). Because Defendants relied on factors Congress intended them to consider, did not fail to consider important aspects of the problem, and did not offer an implausible explanation running

---

[7] Plaintiffs also correctly note (Pls. Reply at 27-28) that the Project would have "visual and setting effects" on the Dillingham Building, Chinatown, and elsewhere, AR00153938 [SEIS at 72]. But the agencies determined in the final analysis — after consultation with qualified architectural historians and Hawaii's State Historic Preservation Officer, *see* AR00153923 [SEIS at 57]; AR00153985 [SEIS at 119] — that those visual and setting effects would not "substantially impair[]" the historically significant features of the properties. AR00153938 [SEIS at 72]. The agency is entitled to rely on the reasonable opinions of its own qualified experts. *See HonoluluTraffic.com*, slip op. at 23 (citing *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989)).

counter to the evidence, Defendants' conclusion was not arbitrary and capricious. *See N. Idaho Cmty. Action Network*, 545 F.3d at 1152-53.

### 3. Harm to non-§ 4(f) resources

Defendants concluded that this factor weighs in favor of the Project because the Tunnel Alternative would result in greater construction-related congestion and impacts to "historic architecture."[8] AR00153940 [SEIS at 74]; *see also* AR00153924 [SEIS at 58]. Whether or not these factors could independently support an imprudence finding, *see* (Pls. Obj. at 25), Defendants did not act arbitrarily and capriciously by weighing them in the "least overall harm" analysis and finding them to weigh against the Tunnel Alternative. Construction of the Alternative would require nine more acres of construction easements than the Project and two more years of construction, AR00153927-31 [SEIS at 61-65], resulting in significant roadway closures, AR00153940 [SEIS at 74]. Perhaps, as Plaintiffs suggest, construction-related disruption and delays attend any construction project. (Pls. Reply at 20). But such impacts still qualify as "harms" that disproportionately affect the Tunnel Alternative and that Defendants may rightly consider as part of the "least overall harm" analysis.

The only impact to a non-§ 4(f) resource that Plaintiffs identify as having escaped Defendants' attention is an impact on safety at the U.S. Courthouse. *See* (Pls. Obj. at 25; Pls. Reply at 29). But Defendants — in consultation with the U.S. General Services Administration, U.S. Marshals Service, and U.S. Federal Protective Service — determined that the Project would "not pose any additional threat to the Courthouse beyond that of surface traffic." AR00154051. As in the earlier summary judgment proceedings, *see* Order at 39, Plaintiffs' claim of increased safety risks to the U.S. Courthouse is unsupported by the record.

### 4. Summary of factors

---

[8] Presumably, this reference to "historic architecture" refers to historic properties that are not protected by § 4(f).

- 12 -

In sum, Defendants did not act arbitrarily and capriciously by concluding that these factors — the Tunnel Alternative's cost, severe impact to § 4(f) properties, and harm to non-§ 4(f) resources — weigh in favor of the Project. Plaintiffs are correct that Defendants must consider the "least overall harm *in light of the statute's preservation purpose*." (Pls. Reply at 25) (emphasis added) (citing 23 C.F.R. § 774.3(c)(1)). But Defendants' balancing of the severe harm to the OR&L properties against the relatively less severe harm to non-contributing elements of Chinatown and elsewhere indicates that Defendants shined the proper preservative light. The weight of the foregoing factors supports Defendants' analysis; therefore, Defendants' balancing of the "least overall harm" factors was not arbitrary and capricious.[9] *See N. Idaho Cmty. Action Network*, 545 F.3d at 1153.

## IV.  Conclusion

For the reasons set forth above,

**IT IS ORDERED:**

**1.**  The court rejects Plaintiffs' challenge to Defendants' compliance with the Summary Judgment Order. Thus, the court **GRANTS** summary judgment to Defendants on all remaining claims.

**2.**  Defendants' Motion to Strike IS **GRANTED.**

/ / / / /

/ / / / /

/ / / / /

/ / / / /

---

[9] The record shows that Defendants used "all possible planning" to minimize harm along the Tunnel Alternative. 23 C.F.R. § 774.3(a)(2); AR00153935 [SEIS at 69]. Plaintiffs do not challenge the point; thus, the court finds that Defendants satisfied the "all possible planning" requirement.

**3.** The Partial Injunction, entered December 29, 2012, now having been fully complied with, is hereby **VACATED.**

**4.** Judgment shall be entered consistent herewith.

Dated this 18th day of February, 2014.

                                          /s/ *A. Wallace Tashima*
                                          A. WALLACE TASHIMA
                                          United States Circuit Judge
                                          Sitting by Designation